GULOTTA, Judge.
The plaintiff-appellee, National Bank of Commerce in New Orleans, filed a Petition for Executory Process to foreclose on a mortgage against the defendant, Southern Land Title Corporation, for the balance due and owing on a collateral mortgage dated November 13, 1964, in the original amount of $1,650,000.
A Petition of Intervention was filed by intervenor-appellant, Leonard Reese Span-genberg, Jr., and Associates, Architects, alleging that intervenor was employed by Southern Land and Title Corporation to design and supervise the construction of the improvements upon the immovable property seized by plaintiff-appellee, prior to the recordation of the act of mortgage and prior to the recordation of a building contract between Southern Land Title Corporation, owners, and H & H Construction Corporation, contractors, and Employers Liability Assurance Corporation, Ltd., surety for the contractor. Intervenor-appellant seeks to have the architect’s lien and privilege on the immovable property and improvements, subject of the seizure, ranked in preference to and superior to the *686 mortgage herein of the plaintiff-appellee, National Bank of Commerce in New Orleans. Edward M. Alba & Associates, Inc., consulting engineers, filed a Petition of Intervention alleging that their firm performed services on the subject property and sought to have their lien and privilege recognized and ranked superior to the mortgage of plaintiff-appellee and any other privileges. The lien of intervenor, Edward M. Alba & Associates was filed on October 7, 1966, in the mortgage office. The architect’s lien of intervenor, Leonard Reese Spangenberg, Jr., was filed on November 3, 1966. The mortgage was recorded on November 11, 1964.
An exception of no cause of action was filed by the plaintiff-appellee to the Petition of Intervention of intervenor, Leonard Reese Spangenberg, Jr., and Associates, as well as to the Petition of Intervention of Edward M. Alba & Associates, Inc., on the grounds that the liens were recorded subsequent to the date of recordation of the mortgage upon which National Bank of Commerce foreclosed.
The exceptions of no right or cause of action were maintained by the trial court to the Petitions of Intervention filed herein dismissing the same. The trial judge assigned written reasons therefor. By amended judgment, the trial court directed the Sheriff of Jefferson Parish to pay the claim of plaintiff-appellee, National Bank of Commerce in New Orleans, out of the proceeds of the sale of the immovable property and improvements in preference to and priority over the claim of intervenors. From the order of the trial court maintaining the exception of no cause or right of action and the amended judgment, inter-venor, Leonard Reese Spangenburg, Jr., filed this appeal. Intervenor, Edward M. Alba & Associates, Inc., has taken no action by way of appeal from the adverse judgment of the trial court.
The contention of the appellant architect is that the architect’s lien primes the mortgage and that LSA-R.S. 9:4813 is inapplicable since it is concerned with contracts not in writing and/or not recorded. Appellant relies on LSA-R.S. 9:4801 and LSA-R.S. 9:4802. That portion of LSA-R.S. 9:4801 which is particularly applicable states that a privilege is granted to the architect which is superior to the mortgage if the work is done or commenced prior to the recordation date of the mortgage. Additionally, appellant further contends that in ascertaining which lien is superior the date of recordation of the building contract is determinative in that if the building contract is recorded prior to the date of recor-dation of the mortgage, the architect’s lien primes the mortgage.
The contention of The National Bank of Commerce in New Orleans, appellee, is that the dates of the recordation of the lien and mortgage should be determinative in ranking the privileges. The National Bank of Commerce in New Orleans argues that since the architect’s lien was recorded subsequent to the recordation of the mortgage that the mortgage primes the architect’s lien and The National Bank of Commerce further avers that since in the instant case we are concerned with a written and recorded building contract, then LSA-R.S. 9:4813 is the appropriate statute since it applies to written contracts which have been recorded.
The particular provisions applicable in the case at bar are LSA-R.S. 9:4801; 9:4802 ; 9:4812; 9:4813.
The trial court in maintaining the exception of no cause of action ranked the mortgage superior to the architect’s lien. The court relied on the fact that the date of the recordation of the mortgage was before the date of the recordation of the architect’s lien. In his opinion the trial judge followed the reasoning of the Court in Capital Bank and Trust Co. v. Broussard Paint & Wallpaper Co., La.App., 198 So.2d 204. In that case the question of ranking a mortgage and architect’s lien where there was no recorded contract was involved. Appellant’s mortgage was recorded subse *687 quent to the commencement of construction of a residence on the subject property. The appellate court held that the mortgage primed the architect’s lien. The language of the Court in Capital Bank and Trust Company is noteworthy in determining when to apply LSA-R.S. 9:4813.
“Answering first defendant’s contention that the provisions of LSA-R.S. 9:4813 require a written contract as an indispensable prerequisite to a valid lien by an architect, we detect no such requirement in the law. Although Section 4813 does indeed state that the lien of an architect shall rank with that of a contractor, this does not necessarily mean that to evidence a valid lien, an architect must enter into a written contract for his services. In equating architects with contractors in rank, the statute merely places such lienors in the same category insofar as concerns the priority of such liens in dispute with lienors whose claims arise from the furnishing of materials, labor or other services covered by the statute. The rank accorded a properly evidenced lien is separate and apart from the manner of its evidencing as required by the statute. A lien has no existence and hence no rank whatsoever until and unless evidenced in strict confirmity [sic] with the law. All that Section 4813, supra, requires, therefore, insofar as concerns the rank of an architect’s lien, is that when evidenced in the prescribed manner, the architect’s lien ranks on the same level as that of a contractor. We hold that an architect is not required to have a written contract with the owner to preserve his lien. He . may record his privilege, as provided in LSA-R.S. 9:4813, by affidavit notwithstanding he has no written contract with the owner.”
The Court in the Capital case, in holding that the argument of the defendant that LSA-R.S. 9:4813 applies only to written contracts was untenable, seemed to indicate that it does not make any difference whether a written and recorded or unrecorded contract is at issue, and LSA-R.S. 9:4813 nevertheless applies. However, in reading LSA-R.S. 9:4812 it is obvious that this provision applies only to unrecorded contracts for the reason that it particularizes that in order to preserve the lien the one in whose favor the privilege is given must record an affidavit within 60 days of the date of the last delivery of materials of the said property or within 60 days of the last furnishing of services or last performance of labor of the same. While in contrast to the above provision, LSA-R.S. 9:4813 provides for a privilege if the privilege is recorded not later than 30 days after registry in the office of the clerk of court or recorder of mortgages of notice of acceptance by the owner of the said work or notice of default. The wording in LSA-R.S. 9:4813 “thirty days after registry in the office of the clerk of court or recorder of mortgages of notice of acceptance by the owner of the said work, or notice of default” (emphasis added) refers, in our opinion, to written contracts. Otherwise, the statute would have incorporated the same language as LSA-R.S. 9:4812 relative to setting forth that 60 days from the date of delivery of last materials or performance of last labor is the applicable period. It appears, therefore, to us that there is no merit in the appellant architect’s contention that LSA-R.S. 9:4813 is applicable only to contracts not in writing, and if in writing, not recorded.
Assuming, therefore, that LSA-R.S. 9:4813 applies to written contracts or unwritten contracts or written contracts not recorded, the next question before this court is whether under LSA-R.S. 9:4801 and LSA-R.S. 9:4802 the architect’s lien primes the mortgage if work was commenced by the architect prior to the rec-ordation of the mortgage.
LSA-R.S. 9:4801 states:
“A. Every contractor, sub-contractor, architect, * * * who performs work or furnishes material * * * has a *688 privilege * * * upon the land and improvements on which the work or labor has been done * * *
B. * * * the privilege given by Sub-Section A of this Section, if evidenced as provided in the applicable provisions of this Sub-Part is superior to all other claims against the land and improvements except: * * * (2) bona fide vendor’s privileges or mortgages if the vendor’s privileges or mortgages exist and have been recorded before the work or labor has begun or any material has been furnished. * * * ”
The Second Circuit Court of Appeal in the Capital case, supra, when presented with the same question before us resolved the issue as follows:
“We find no merit in the architect’s contention that pursuant to LSA-R.S. 9:4801, specifically, and LSA-R.S. 9:4812, generally, he is entitled to preference over all claimants save holders of bona fide mortgages recorded prior to his furnishing architect’s services to the owner.
“Again, we repeat that the statute being in derogation of ordinary rights, must be strictly construed. No lien arises under the statute unless the statute’s terms are fully met. The lien when recorded in compliance with the statute enjoys only such priority as is specifically granted.
“LSA-R.S. 9:4801, subsection B, in ambiguous language provides that the liens granted in subsection A (which includes architects) takes precedence over subsequently recorded mortgages ‘if evidenced as provided in the applicable provisions of this Sub-Part * * *.’ The method of evidencing the lien granted architects by LSA-R.S. 9:4801 and 4812 is set forth in Section 4813 as herein-above quoted in full. Said latter section clearly and succinctly states the architect’s lien affects third persons ‘only from the date of recordation.’ In the present case Capital’s mortgage was recorded prior to the filing of the architect’s lien. Under such circumstances, the mortgage primes the lien. LSA-R.S. 9:4813.”
The learned trial judge in written reasons properly concluded that LSA-R.S. 9:4813 and the decision of the court in the Capital case, supra, are applicable in the case at bar and that, therefore, the mortgage primes the architect’s lien. We concur with the judgment of the trial court.
Accordingly, the judgment maintaining the exception of no right or cause of action dismissing the intervention of Leonard Reese Spangenberg, Jr., and Associates is affirmed. Costs are to be assessed against intervenor-appellant.
Affirmed.